GENERAL ELECTRIC COMPANY

*v.*

G. HILTON BUTLER, Commissioner of Revenue.

364 S. W. 2d 361.

(*Nashville*, December Term, 1961.)

Opinion filed November 9, 1962.

On Rehearing February 7, 1963.

WALLER, DAVIS & LANSDEN, Nashville, MACLIN P. DAVIS, JR., Nashville, of counsel, for complainant.

GEORGE F. McCANLESS, Attorney General, MILTON P. RICE, DAVID M. PACK, Assistant Attorneys General, Nashville, for defendant.

PER CURIAM.

This suit was originally filed by General Electric under sec. 67-2303, T.C.A., to recover penalties and interest paid

under protest, on total amount of taxes paid and due under the Sales and Use Tax Act.

This litigation arises out of transactions of the General Electric Supply Company, a division of the General Electric Company, with its vendees. General Electric Supply Company is the supplier for General Electric dealers. It also sells to contractors or others who are the ultimate consumers of their products. These operations are supervised by a Sales Manager who has a crew of salesmen who call on customers, get the business and bring in orders. General Electric generally distributes all types of electrical supplies, but does not handle major appliances.

An audit was made by the Department of Revenue of the State of the complainant's transactions covering a period of time from January 1, 1953, through December, 1958. As a result of this audit, assessments were made against General Electric for additional tax liability, together with penalty and interest thereon. As a result of this audit certain taxes were found due which were paid along with penalty and interest. This suit though was brought by the General Electric Company only to recover the amount of the penalty and interest in an amount in excess of $10,000.00, which amount represents approximately half penalty and half interest. The Chancellor held that in certain instances penalty and interest were not equitably collectable and in other instances he held that they were properly collected. From the adverse decree against General Electric and against the Commissioner, both parties have perfected appeals.

The General Electric Company has pitched its entire case upon the holding of this Court in *Tenn. Products and Chemical Corp. v. Dickinson,* 195 Tenn. 63, 256 S.W.

2d 709, while the State pitches its lawsuit upon the case of *Swartz v. Atkins*, 204 Tenn. 23, 315 S.W.2d 393. Thus it is that we are met in the outset with the contention by the respective parties that these respective cases control the positions that they take in these lawsuits. When we wrote *Swartz v. Atkins*, supra, it was the intention of the Court by what is said in that opinion to more or less limit and confine the holding in *Tenn. Products v. Dickinson*, supra, to the particular facts of that case and the time at which it was written. The Tenn. Products case was written in the early stages of the Sales Tax Law in this State and before people of the State were adequately familiar with the Sales Tax Act. The Tenn. Products case is based largely and primarily, though not said so in the opinion, on the time element. We now hold that the Tenn. Products case must be and is limited to the particular facts of that case and the time in which it was written, and the holding in that case is no longer applicable. The correct rules applicable to situations of the kind herein are controlled by the holding of this Court in the Swartz case, wherein the applicable Code Section (sec. 67-3026, T.C.A.) is quoted in full. That Section is applicable in the present litigation and in that case we held that ''the Legislature in making the five per cent penalty * * *'' intended for it to ''apply in any instance where the taxpayer had failed to make his return and make the payments on time.'' This quotation is applicable here and we must and do apply it to the factual situation presented in this case.

More or less as an explanation and reason why we say what is said above might be better understood by a quotation from two articles appearing in the Vanderbilt Law

Review. In Vol. 6, page 1170, Vanderbilt Law Review, the writer very correctly says:

"In two cases, during the period considered, the Tennessee Supreme Court upheld the power and propriety of courts to relieve taxpayers of statutory penalties when the equities of the case seemed to demand it. If based upon well-known principles of statutory construction in favor of a taxpayer and strict construction to avoid penalties, such cases raise no problems. If, apart from the statutory interpretation and the application of the specific constitutional provisions, the Court exercises power to relieve from statutory requirements otherwise applicable because it is 'sitting as a court of equity,' it seems to raise serious questions relating to the basic separation of governmental functions called for under the Constitution of the State."

One of the two cases cited for this statement is the Tennessee Products case. We feel confident that the holding in this case does raise serious questions under our Constitution and this, aside from the reasoning in the Swartz case, is one of the major reasons why we are confining the Tennessee Products case to the facts and time of that case.

In an excellent article on State and local taxation appearing in Vol. 12, Vanderbilt Law Review, at page 1346, the author says:

"In *Swartz v. Atkins,* the issue was whether a taxpayer could escape penalty for failing to make a tax return and pay a certain use tax on the sole ground that the taxpayer was not aware that he owed any tax. The Tennessee court quite properly held, it seems, that

such delinquency on the part of the taxpayer is not excused from the statutorily imposed penalty where the statute makes no provision for any such excuse. Although a tough decision for an innocent taxpayer, to hold otherwise would appear to open up a flood gate of would-be ignorance of tax laws. The decision reached by the court is also buttressed by the fact that the same statute did require 'wilful intent' in order to penalize the taxpayer for nonpayment where the penalty was much larger, but the statute makes no mention of intent under the smaller penalty which the taxpayer was seeking to escape in the case at hand.''

Thus it is that we confine the Tennessee Products case solely to the factual issue at the time in that case.

■ The contention of General Electric in this case is based entirely upon the proposition that it was guilty only of honest mistakes or a mistaken interpretation of the law relating to the Sales and Use Tax, and consequently under such circumstances may recover payment of penalty and interest under the equitable powers of the court. This record bears out such a contention, but we think for reasons above pointed out that this does not relieve penalties and interest for reasons stated in the Swartz case, supra.

■ The Chancellor correctly held that no recovery could be had of these penalties and interest insofar as they ''arose as a result of honest mistakes by complainant in calculating the amount of tax due * *.'' This holding was made under the authority of *Swartz v. Atkins,* supra. The Chancellor held likewise that General Electric could not recover these penalties and interest:

"(a) On sales made to non-residents of the State of Tennessee from whom complainant collected and paid the tax of the State of purchaser's residence.

"(b) On sales made to Commercial Electric Company for complainant held no certificate from said Company."

We affirm such holding based on the reasoning in the Swartz case, supra.

The Chancellor went on to hold though that the complainant could recover penalties and interest on transactions where it held exemption certificates and it had no knowledge that the materials were not for re-sale in:

"(a) Sales to Standard Disinfectant Company.

"(b) Sales to Borden Electric Company."

█ The Chancellor also held that complainant is entitled to recover on a sale made to the Shannon Electric Company because it thought that the sale was being made in interstate commerce and that it had no knowledge that the material would be used in Tennessee, and could recover the tax paid on April 20, 1960, "on the taxes for the first eleven months of 1953, statute of limitations of six years having barred the recovery of said taxes." It is from these things which the Chancellor held against the State that they have appealed. After reading this record, we are convinced that in each of these instances wherein the Chancellor allowed a recovery that he was in error. Under the rules and regulations which are promulgated by the Department and placed in the hands of taxpayers, it is provided among other things when a dealer, like the General Electric Company herein, sells its property free

of the Sales Tax on a certificate of re-sale "when he knows, or should know in the use of ordinary care, that the property which he is selling is not for re-sale by the purchaser, but is for the purchaser's own use or consumption in his business or otherwise the registration certificate of the wholesaler may be revoked by proper action of the Commissioner, and he shall be liable for the tax." There are other provisions. Under the Act and under these regulations there must of necessity, due to the complication of the tax matter, be a burden cast upon the taxpayer to determine whether or not the sale he is making is taxable. If this were not true and the burden was on the State to determine each tax thing at the time, it would be an impossible situation. Consequently there is a greater burden cast upon the taxpayer to determine under the factual situation depending upon each sale whether or not the tax is due. What has just been said will appear applicable by references to certain sales made by the taxpayer hereinafter.

In the two instances above mentioned sales made to the Standard Disinfectant Company and the Borden Electric Company were allowed the taxpayer on the theory he had no knowledge that the things were not to be used for re-sale. The proof shows with reference to the Standard Disinfectant Company that this was a business engaged strictly in selling janitorial supplies. The additional tax levied here which was paid by General Electric was based on the records of this company which reflected sales of small appliances and in some instances of major appliances which were not for re-sale but purely for the use and consumption of Standard itself. The merchandise purchased by this company was used for gifts and premiums to its customers. It seems to us that even though

Standard held a certificate which would exempt it where it bought things for re-sale, when it appeared to General Electric, as it should, since Standard was not in the business to re-sell these things, and that they probably were for its personal use, that this should not exempt these articles.

 The Chancellor allowed a recovery of the penalty and interest paid on the Borden Electric Company tax. Of course, it must be remembered in each of these instances that General Electric did pay the tax and only the interest and penalties are involved. Borden Electric was both a dealer and a contractor and the instances out of which this tax arose were the sales of certain products for the use of a construction project at Cookeville which was being performed by Borden Electric. It seems to us that the use of the supplies purchased by this vendee under the circumstances, knowing that he was both a dealer and a contractor, there was an obligation on the vendor of these things to determine whether or not these articles were tax free. We thus think that this was a taxable item and, under the Act for the reasons above set forth, penalties and interest should not be returned. There is some indication from reading this record that General Electric had actual knowledge that this merchandise was being sold to Borden for use on this job and not for resale.

 There were certain sales made to Shannon Electric Company in Nashville. This company ordered the goods shipped to Fort Campbell, Kentucky. The Chancellor relieved the penalty and interest, even though the tax was paid by General Electric and no complaint made of that, because this was a transaction where it was pur-

chased in Nashville to be shipped in interstate commerce. We think though for the same reasons above expressed that the Chancellor was wrong in this because even though this was shipped to Fort Campbell, Kentucky, the sale was consummated entirely within Tennessee by a Tennessee vendee, and even though it was shipped in interstate commerce General Electric should have known that the goods were going to be used in Tennessee after they got there. The actual delivery of the goods was made to that portion of Fort Campbell which lies solely within the State of Tennessee. Transporting goods from one point in a State to another point in the same State, even though the carrier does cross over the State line, does not make such a transaction interstate commerce. *Lehigh Valley Railroad v. Penn.*, 145 U.S. 192, 12 S.Ct. 806, 36 L.Ed. 672. This electric company in Nashville that purchased these things was engaged in the contracting business and as such it was the ultimate consumer of merchandise purchased from the complainant and under Rule 68 of the Sales and Use Tax Law it was liable for the Sales Tax on the sales to this vendee.

■ The last item on which the taxpayer was allowed to recover the penalty and interest paid was on taxes for the first eleven months of 1953 because the collection of this item was barred by the statute of limitations. We find in the record two copies of a long agreement waiving the statute of limitations; then, too, the manager of General Electric testified once or twice that there was no intention and that General Electric didn't want to rely on the statute of limitations; that they expressly waived it. Of course, this waiver was executed to give the parties a chance to check the records and do all these things, and as a result of this waiver no action was taken until after

the payment was made and then this suit was brought to get the money back. The argument made for the recovery of this is more or less begging the question because it says it is true we waived the statute of limitations but still we want our money back for the penalties and interest on this because we didn't know anything about it; we were honestly mistaken in it and didn't know that we owed this sum of money. This though is not a sufficient excuse and under the statute there is liability therefor. We assume that the Chancellor based this allowance largely on the fact that he thought that since the statute had to run there were equities in favor of the taxpayer. Under such a situation we think that no equities are involved. This waiver, which was executed, was for the benefit of both parties. It was probably just as much, or more, for the convenience of the taxpayer as it was for the State.

The waiver, of course, of the tax liability under the statute of limitations necessarily is a waiver of the collection of the penalty and interest, and thus when it was determined from this audit that a tax was due the interest and penalty attached as a matter of law subjected the complainant to the payment thereof.

We have carefully considerd this matter and each item therein without going into too much detail in this opinion as it is entirely too long already, and have concluded that the Chancellor is correct in the first instance in denying recovery and was wrong in the second instance as pointed out in granting recovery. The result is that the decree is affirmed in part and reversed in part. Due to the fact that the Tennessee Products case is on record (counsel for the taxpayer in the Tennessee Prod-

ucts case is the same counsel for the taxpayer in the instant case) the court costs of this case will be taxed one-third to the State and two-thirds to the taxpayer.

PREWITT, CHIEF JUSTICE TOMLINSON, SPECIAL JUDGE, and BURNETT and FELTS, JUSTICES, concurred.

On Petition to Rehear

PER CURIAM.

General Electric Company through able counsel has filed herein a very courteous, dignified and forceful petition to rehear. We have read and re-read this petition and in addition thereto have again examined and re-read the record herein. After doing so, the following opinion results.

It is very ably contended that a judicial construction was given this tax statute in the Tennessee Products & Chemical case (*Tenn. Products & Chemical Corp. v. Dickinson*, 195 Tenn. 63, 256 S.W.2d 709) referred to at length in the original opinion herein, which is binding on us and amounts to a reenactment of the statute by the Legislature when it did not change the statute after the Tennessee Products case was announced.

In support of this argument a number of cases are cited, such as *Miller v. Kennedy*, 164 Tenn. 470, 51 S.W.2d 1000; *Smith v. North Memphis Sav. Bank*, 115 Tenn. 12, 89 S.W. 392; *Hayes v. Kelley*, 111 Tenn. 294, 76 S.W. 891; and others.

These authorities are fine so far as they go, but they do not cover the question here. The tax statute involved in the instant case was in no wise applicable in any of these cases. As pointed out by this court in *Swartz v.*

*Atkins,* 204 Tenn. 23, 315 S.W.2d 393 this Court did not so construe the statute in the Tennessee Products case— we merely applied an old equitable doctrine which had been followed in many preceding cases which are cited in the present petition to rehear. This doctrine is not disturbed by the Swartz case, nor is it disturbed by the opinion in this case.

The first time the tax statute was construed and a meaning applied to the terms of the Act was in the Swartz case. The rule contended for now in this petition to rehear would apply if we attempted to ascribe a different meaning to the tax statute. This rule of the interpretation or the meaning of the statute as promulgated by the Swartz case was again followed by this Court in *Combustion Engineering v. McFarland,* 209 Tenn. 75, 349 S.W.2d 138, wherein this Court, among other things, said: ''When the latter opinion (the opinion in the Swartz case) is examined, however, it will be seen that this Court has not followed that broad language in determining what the equities of the case should be to justify the Court in granting relief in the face of a legal claim or demand such as the statute T.C.A., sec. 67-3026 fixed, as the same is construed in this latter opinion.'' And then again in this Combustion Engineering case we said: ''When a deficiency occurs the interest and penalties become a part of the tax itself so that the Department has no discretion to remit the penalty and interest.''

The contention in the petition to rehear now being discussed must be overruled and we must adhere to our statements in regard to the Tennessee Products case as made in the original opinion herein for reasons therein expressed.

As said in the outset we have again read the briefs, pleadings and proof herein and it seems perfectly obvious to us from these pleadings and briefs filed by the respective parties that the principal issue involved was the interpretation to be given the language used by this Court in these two cases, i. e., Tennessee Products and the Swartz case. Thus so considering it was the reason for our statement made in the beginning of the original opinion herein. We must and do adhere to this position.

It is argued that the allowance of the return of certain penalties and interest, set forth in the original, was not based on the equitable doctrine as set forth in the Tennessee Products case. It is true that the Chancellor didn't so say, but it must be concluded that the only reason possible for the allowance of these items in favor of the tax payer was basically based on the equitable doctrine as applied in the Tennessee Products case. As said in the original opinion, the reason for our reversing this holding of the Chancellor was because this equitable doctrine did not apply to the return of interest and penalties when considering an objective construction as placed on the Swartz and Combustion Engineering cases heretofore.

Penalty and interest attach as a matter of law, as we pointed out in the Combustion Engineering case. The petitioner here has paid the tax and only seeks to recover the penalty and interest. Certain statements we made in the original opinion on these questions may and are too broad to apply as a general proposition but were intended, and now so construed, as applying only to the factual situation as developed in this record on these various items that were allowed by the Chancellor. What we have just said applies particularly to the Standard

Disinfectant Company and the Borden Electric Company who had re-sale certificates. The mere fact that they had these certificates did not relieve them in the particular case from collecting the tax when they knew, or should have known, that the merchandise was being purchased for ultimate consumption. This record supports the fact that they at least should have known that this was true. The proof in this record shows that the supplies purchased by this vendee, that is, Borden Electric Company, were being shipped directly to the construction project and were being used there by the contractor as the ultimate consumer.

Again let us, a little more in detail, look at the situation of the sales to Shannon Electric Company. The record beginning on page 78 and going two or three pages there shows that this sale was made to Shannon Electric, a Nashville Company, and they in turn shipped it to Ft. Campbell, Kentucky. Upon investigation of this sale, General Electric collected the tax from Shannon based on a pro-rata consumption of approximately seventy-two (72%) percent of the goods which were used by Shannon in Tennessee. The record shows that Shannon did not purchase these items for re-sale but for consumption. "They were consumed according to Shannon Electric Company, seventy-two per cent in Tennessee and the remainder of it in Kentucky. (Tr. p. 79) * * * No. Except what Shannon told the General Electric, Mr. Felts of General Electric sent out and talked to Shannon and Shannon told Felts what percentage was used in Tennessee and what percentage was used in Kentucky, and we accepted Mr. Shannon's statements and reduced the audit accordingly." It is clear thus that this tax was correctly collected,

and thus it is as a matter of law the interest and penalties attached.

The State did assign error as to the allowance of the portion allowed for interest and penalty on the part where the statute of limitations had run. The petitioner here, General Electric, does not insist that the assessment of taxes is erroneous and since interest and penalty attach as a matter of law this thus cannot be questioned even if General Electric did collect this tax from its vendees, because the only contention of the tax payer when properly analyzed is that it is contending in good faith that it was not liable for the tax. This does not excuse the taxpayer.

After a very thorough study and consideration of the matters, questions and points raised in the petition to rehear we are satisfied with our original opinion and all questions raised therein as clarified by this opinion are overruled and denied.