George M. TIDWELL, Commissioner of Revenue for the State of Tennessee, Appellant,

v.

The GOODYEAR TIRE & RUBBER COMPANY, Appellee.

Supreme Court of Tennessee.

March 10, 1975.

R. A. Ashley, Jr., Atty. Gen., Everett H. Falk, Asst. Atty. Gen., for appellant.

Tom Elam, Elam, Glasgow, Tanner & Acree, Union City, for appellee.

## OPINION

HENRY, Justice.

This is a suit brought pursuant to Sec. 67–2303 et seq., T.C.A., to recover a statutory penalty, paid under protest, and assessed for non-payment of taxes under the Tennessee Sales and Use Tax Act.

The trial judge awarded judgment for the full amount of the penalty, together with interest thereon. Appellant, who is sued solely in his official capacity, has perfected an appeal.

The basic issue before the Court is whether the appellee, The Goodyear Tire & Rubber Company, failed to file its use tax return and make proper and punctual payment of its tax liability as a result of its being misled by erroneous advice upon the part of the Tennessee Department of Revenue.

### I.

Goodyear operates approximately 100 plants throughout the world, 23 of which are located within the United States. At some time prior to 1968, it determined to locate a plant in Union City, Obion County, Tennessee. To this end it entered into an agreement with the Industrial Development Board of Union City. Pursuant to this agreement industrial bonds were issued in the original amount of Seventy-six Million ($76M) dollars, a site was provided and physical facilities were erected. The entire physical establishment is owned by the Board, with the bond issue being amortized by rental proceeds.

Construction was done by Goodyear and by various subcontractors, with its engineering department providing technical direction and supervision. It is the insistence of the Department of Revenue that Goodyear served as general contractor, whereas Goodyear insists that it was merely an agent for the Board.

During the construction stage Goodyear purchased materials that were used to construct the plant and, therefore, to improve real property. It is these purchases which gave rise to the State's claim for use tax. Goodyear did not file the required tax returns and paid no use tax on these materials.

It is the theory of Goodyear that it acted in good faith in attempting to ascertain and meet its tax liability, but that it was misled by a lack of clarity of the law and the regulations and by representations made by the Department of Revenue. The Department takes issue and insists that the law is clear and the advice given was correct.

The record reflects that Forrest A. Price, Manager of State Taxes for Goodyear and William J. Owens, Director of the Sales and Use Tax Division of the Department of Revenue held a conference on the various tax matters involved, in Nashville, on May 15, 1968. The primary point of discussion was the procedure for determining Goodyear's *sales* tax liability on that portion of the lease rental attributable to tangible personal property, i. e. the machinery, equipment, etc.

They apparently reached an accord that this determination could not be made accurately until the completion of the project. At that time an inspection and examination would be made and the sales tax liability determined. Pending completion it was agreed that no sales tax returns would be filed and no payments would be made.

During this same conference, the use tax payments by the various contractors working on the construction project was discussed, and an agreement was reached that Goodyear would withhold payments to them pending a determination of the use tax liability of these contractors. Goodyear abided this agreement.

It is Mr. Price's insistence that it was his understanding that "Goodyear had no obligation to file any tax return and pay any tax at that time; and that any obligation to pay any tax would be deferred until

completion of the examination, at which time the tax obligation would be determined." Tax on the rental payments would be retroactive.

On 7 February 1969, Mr. Owen addressed a letter to Mr. Price. In pertinent part this letter read as follows:

I believe we did discuss, when you were in my office, that those contractors engaged in installation or erection of property which becomes real property are liable for the tax at the time the property is used.

It would have clarified this entire situation and eliminated this controversy if Mr. Price had added, at this point, a three word sentence, viz.,

This includes Goodyear.

It did not contain this sentence nor did it contain words of like import.

This letter also points out that tentative assessments had been made on these contractors "as a precautionary measure to insure that the proper tax liability would be determined and payments secured before the contractor removed himself and his property from the state."

Clearly the Department of Revenue was indicating that the taxes were neither due nor payable but precautionary steps were being taken to insure compliance by non-resident contractors. Goodyear was not in this category.

In due course the State was advised that the project was nearing completion and an audit was conducted. Pursuant to this audit, an assessment of use taxes in the amount of $50,690.02 was made against Goodyear upon the theory that Goodyear was a general contractor for the Industrial Development Board, within the intent of the Sales and Use Tax Act. This assessment included a penalty of $9,330.83, plus interest in the sum of $3,989.34. It was at this time, and for the first time, that Goodyear knew it was liable for any use tax.

Goodyear paid the entire assessment under protest and this suit was instituted for the recovery of the penalty.

The trial judge held that Goodyear had been misled by the Department of Revenue, and decreed a refund of the entire penalty, with interest at the legal rate.

## II.

We hold that Goodyear was a contractor within the purview of Sec. 67–3004, T.C.A., and not an agent of the Industrial Development Board. It, therefore, was not exempt from the payment of sales or use tax by reason of supplying materials and equipment to an agency or political subdivision of the State of Tennessee. The tax was imposed on their private use and their own benefit, profit and gain and not directly upon an agency of the State. This conclusion is demanded not only by the language of the Act but by the holding of this Court in United States v. Boyd, 211 Tenn. 139, 363 S.W.2d 193 (1962), affirmed 378 U.S. 39, 84 S.Ct. 1518, 12 L. Ed.2d 713 (1964), in an exhaustive and definitive opinion by the late Justice Weldon White.

## III.

The question for determination is whether this is a proper case for a remission of the penalty.

Jurisdiction of suits seeking the recovery of penalties paid under the Sales and Use Tax Act is conferred upon "any court in the county of the taxpayer's residence or in the county of the location of the defendant having jurisdiction of the amount and parties."[1] In effect this gives to the circuit and chancery courts concurrent jurisdiction. Courts of equity have broad authority to relieve against penalties

---

1. Sec. 67–2306, T.C.A.

which are "odious and not favored by the law." Tennessee Products & Chemical Corp. v. Dickinson, 195 Tenn. 63, 256 S. W.2d 709 (1953). Since the circuit court has concurrent jurisdiction it necessarily follows that it has the power, authority and jurisdiction to apply equitable principles and reach equitable remedies.

*Tennessee Products* stands for the proposition that where the equities of the case demand, the courts will remit penalties. This case was tried in chancery and on bill and answer. We regard this holding as being but another declaration of the traditional power of courts of equity to relieve against forfeitures and penalties. It was decided in 1953, in the early days of the sales tax. It held that the legislative intent was

> (T)o impose a penalty upon an evasive, careless, and recalcitrant taxpayer, and not to penalize a taxpayer who, acting in good faith, made monthly returns and payments when they fell due, and paid all but 4% of the tax promptly.

We regard this language as being overbroad.

The penalty provisions of the act are contained in Sec. 67–3026, T.C.A. As originally written, and as it now appears, speaking in general terms, it imposed a 5% (increases at 30-day intervals) penalty for failure to file and a 50% penalty for filing a false and fraudulent return. Therefore, as a general rule, failure to file prompts a 5% penalty; fraudulent filing one of 50%.

It should be noted that, except to the extent of the broad power of courts of equity to remit penalties, this case was to all intents and purposes overruled by General Electric Co. v. Butler, *infra,* wherein the Court said:

> We now hold that the *Tenn. Products* case must be and is limited to the particular facts of that case and the time in which it was written, and the holding in that case is no longer applicable.

In Swartz v. Atkins, 204 Tenn. 23, 315 S.W.2d 393 (1958), the taxpayer sought recovery of the penalty on the basis of his "unawareness of the fact that taxes were owed." The Court held that where the claim is purely equitable, the Court will grant or refuse relief at its discretion, but when it is a purely legal claim or demand equity will apply the requirement of the statute and not relieve the claim.

The Court held that the legislature in making the 5% penalty intended for it to apply in any instance where the taxpayer had failed to file his return and pay his tax punctually. The element of "wilful intent" is involved only as to the 50% fraud penalty.

The Court, however, recognizes the power of equity to grant relief, in these words:

> (A) penalty is attached regardless of the willfullness of it, but this does not relieve, or have anything to do with the powers of a court of equity which may relieve, of those penalties if the equities of the situation demand.

The Court notes that the taxpayer does not allege that he was misled by the defendant Commissioner or by others whose duty it was to administer the law, nor that he ever sought information or inquired as to his tax liability. The Court denied the relief, concluding that "there are no equities in favor of relieving taxpayer of this penalty . . . ."

In Combustion Engineering Co. v. Mac-Farland, 209 Tenn. 75, 349 S.W.2d 138 (1961), the taxpayer's petition for relief was based upon errors and oversights on the part of its employees. This case was heard on stipulation and it was not stipulated that the taxpayer had been misled by anyone connected with the State.

Professor Hartman, writing in 16 Vanderbilt Law Review, 865, 886, makes this apt comment:

> The *Combustion Engineering* decision is a rough one on the taxpayer, since his

delinquencies apparently arose through no intent to evade on his part. However, *Swartz* makes it clear that where the penalty for delinquencies is not based on the larger one for fraud, it was the intention of the legislature to apply the smaller penalty to anyone who failed to make a return and pay his tax within the time set by the taxing statute. An intent to evade is not a condition precedent to the imposition of such penalty. *Combustion's* penalties were not based on fraud and thus required no intent to evade. Moreover, the *Combustion* delinquencies were in no way the fault of the Tennessee Department of Revenue; they were solely the fault of the employees or independent contractors hired by the taxpayer to compute the amount of the tax. To have held that mistakes thus caused would be an adequate basis for relieving against the penalties would have opened up a Pandora's box of troubles for the revenue department. If delinquencies caused by mistakes of the taxpayer's employees or those under the control of the taxpayer, would relieve taxpayer from the penalties, it would, to a large extent, nullify the penalty provision of the statute. In most delinquency cases, no doubt the unfortunate taxpayer could discover some sort of a mistake that gave rise to the delinquency.

In General Electric Company v. Butler, 211 Tenn. 196, 364 S.W.2d 361 (1963) the Court rejects *Tennessee Products* and reaffirms *Swartz*. There the taxpayer's claim was predicated upon the single proposition that it was guilty only of honest mistakes or a mistaken interpretation of the Sales and Use Tax law. Relying on *Swartz,* the Court repelled taxpayer and denied relief.

The last relevant pronouncement of this Court is in Benson v. United States Steel Corp., 225 Tenn. 164, 465 S.W.2d 124 (1971). In an excellent and exhaustive opinion by the late Justice Creson, the various cases heretofore cited are explained and distinguished. We summarize these comments.

*General Electric* knew or should have known that its products were, in fact, being purchased for ultimate use and it should have avoided the prejudicial situation in which it later found itself.

In *Combustion Engineering* the Court laid much stress on the fact that there was no showing that the taxpayer had been misled.

In *Swartz* the taxpayer relied upon his "isolated personal ignorance" of the law, not inspired by the Department.

Justice Creson notes that "none of the subsequent cases have impugned the basic principle of the *Tennessee Products* case —that where the equities demand, the courts will exercise their power to remit penalties."

The opinion sets out verbatim the "guidelines" of the Attorney General's office to be used by the Department of Revenue in determining what cases present "a good and reasonable cause in penalty relief," as follows:

(1) The taxpayer incurred the deficiency as a result of having been misled by erroneous advice upon the part of officials charged with the enforcement of the statute.

(2) The taxpayer incurred the deficiency as a result of legal misadvice from an ostensibly competent independent source (lawyer, accountant, etc.).

(3) The provisions of the pertinent law or regulations were at the time the deficiency was incurred unsettled, unclear or misleading to a reasonable person and the taxpayer acted in good faith upon a reasonable though mistaken application of such law or regulations, with the result that the tax deficiency in question was incurred.

(4) The deficiency resulted from reliance by the taxpayer upon factual misre-

presentations made by persons with whom he dealt in the course of his business, the taxpayer having no reason to doubt or question such misrepresentations.

Thereafter, under the fact situation as presented in that case, the Court held that the record supported the insistence of plaintiffs as to being misled.

## IV.

We hold that Goodyear acted in good faith in connection with this matter and was under the honest and well founded belief that its tax liability would not be determined until completion of the physical facilities at its Union City plant.

We further hold that Goodyear was misled by erroneous and incomplete advice upon the part of the Department of Revenue, and that the ends of justice demand a remission of the penalty.

We wish, however, to make it crystal clear that neither the Department of Revenue, in general, nor Mr. Owens, in particular, was guilty of any act of bad faith or improper conduct. From a careful reading of the transcript we are impressed with the manifest competence and complete candor which characterized his testimony. We simply think that the totality of the situation had as its end result, the unintentional but definite creation of a legitimate belief on the part of Goodyear that its tax liability determination would await the completion of its plant.

In reaching this conclusion we overrule no case herein cited, although as indicated, we do not adhere to the broad language in *Tennessee Products*. Particularly, we no longer view the complexity of the law as being a consideration nor do we agree that a misunderstanding by the taxpayer of his liability, standing alone, would justify penalty relief. With these exceptions we reaffirm all cases.

We would caution the profession, however, that this case is limited to its own factual situation and is not to be construed as liberalizing the predicates for penalty relief.

The judgment of the Circuit Court is affirmed.

The costs of this appeal are taxed against the appellee.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.