# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

May 15, 1998

Cecil W. Crowson
Appellate Court Clerk

EDWIN B. RASKIN CO.,    )
    )
    Plaintiff/Appellee,    )
    )    Appeal No.
    )    01-A-01-9708-CH-00392
VS.    )
    )    Davidson Chancery
    )    No. 96-850-III
RUTH E. JOHNSON,    )
Commissioner of Revenue,    )
State of Tennessee,    )
    )
    Defendant/Appellant.    )

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

MICHAEL D. SONTAG
BRYAN W. METCALF
Bass, Berry & Sims PLC
2700 First American Center
Nashville, Tennessee 37238-2700
    Attorneys for Plaintiff/Appellee

JOHN KNOX WALKUP
Attorney General and Reporter

CHRISTINE LAPPS
Assistant Attorney General
Cordell Hull Building, Second Floor
425 Fifth Avenue North
Nashville, Tennessee 37243-0489
    Attorney for Defendant/Appellant

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

## O P I N I O N

The issue in this case is whether the private manager of a city-owned golf course is entitled to the city's exemption from sales and use taxes. The Chancery Court of Davidson County held that the operator was exempt from the taxes. We agree.

## I.

The city of Hendersonville owns the Country Hills Golf Course, an eighteen hole course that also includes a driving range, a pro shop, and a snack bar. Edwin B. Raskin Company ("Raskin") is a management company, and in 1992, it entered into an agreement with the City to manage the golf course. Raskin did not charge any sales tax on greens fees, driving range fees, club membership, or cart rentals, nor did it pay sales or use taxes on items it purchased for use in operating the course. After an audit, the Commissioner of Revenue assessed Raskin with the unpaid taxes and Raskin challenged the assessment in the Chancery Court of Davidson County. The chancellor held that the City's exemption extended to Raskin.

## II.

The Tennessee Code imposes a sales tax on certain recreational activities. The tax applies to the gross receipts or gross proceeds of:

> (1)    Dues or fees to membership sports and recreation clubs, . . .
>
> (3)    Charges made for the privilege of entering or engaging in any kind of recreational activity, when no admission is charged spectators, . . .
>
> (4)    Charges made for the privilege of using tangible personal property for amusement, sports, entertainment or recreational activities such as trampolines, golf carts, bowling shoes, skates or other sports and athletic equipment; . . .

Tenn. Code Ann. § 67-6-212.

The legislature has, however, provided an exemption for local governments on events they conduct, produce, or provide. Tenn. Code Ann. § 67-6-330(13).

A use tax is imposed on certain personal property by Tenn. Code Ann. § 67-6-203:

> (a)   A tax is levied at the rate of six percent (6%) of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state; . . . .

But, Tenn Code Ann. § 67-6-329(13)(1997 Supp.) exempts all sales made to the state of Tennessee or any county or municipality within the state.

The Code also imposes a tax on certain property used by contractors or subcontractors. Tenn. Code Ann. § 67-6-209(b) provides:

> Where a contractor or subcontractor hereinafter defined as a dealer uses tangible personal property in the performance of the contract, or to fulfill contract or subcontract obligations, whether the title to such property be in the contractor, subcontractor, contractee, subcontractee, or any other person, or whether the title holder or such property would be subject to pay the sales or use tax . . . such contractor or subcontractor shall pay a tax at the rate prescribed by § 67-6-203 measured by the purchase price of such property . . . .

That section is followed, however, by subsection (c) which provides:

> The tax imposed by this section shall have no application where the contractor or subcontractor, and the purpose for which such tangible personal property is used, would be exempt from the sales or use tax under any other provision of this chapter.

### III.

We are of the opinion that the critical question in this case is whether Raskin is operating the golf course as the City's agent or as an independent

contractor. This question was the determining factor in *United States v. Boyd*, 363 S.W.2d 193 (Tenn. 1962), a case involving the operation of the atomic energy facility at Oak Ridge. *See also Tidwell v. Goodyear Tire & Rubber Co.*, 520 S.W.2d 721 (Tenn. 1975). If Raskin is merely an agent, the City is operating the golf course through Raskin's agency; if Raskin is an independent contractor, it is operating the golf course as an independent entity, and the operation is not the City's.

In *United States v. Boyd*, the court addressed the difficulty in deciding whether a party is an agent or an independent contractor. Citing 2 C.J.S. *Agency*, § 2, the court said that the decision is based on the extent of control exercised over the employee: the employee is an agent if the employer retains control over the means of accomplishing the result; he is an independent contractor if the employer is interested only in the result. 363 S.W.2d at 195. Then the court cited *Carbide & Carbon Chemicals Corporation v. Carson*, 239 S.W.2d 27 (Tenn. 1951) for the proposition that the distinction between an independent contractor and an agent "depends upon the intention of the parties as expressed in the contract." 239 S.W.2d at 31.

The trial judge in this case also considered evidence of how the parties actually operated; how they observed certain conventions that were not mentioned in the contract. The state does not raise that action as a specific issue on appeal but it does argue (1) that only the written contract should control, or (2) that the extra-contract controls exercised by the City do not change the conclusion that Raskin is the party actually operating the golf course. We are of the opinion that the parties' actual conduct -- and not just our interpretation of their contract -- is relevant to the question of whether the City conducts, produces, or controls the golf course. The practical construction of a contract is strong evidence of its meaning, *Dupont Rayon Co. v. Roberson*, 12 Tenn. App. 261 (1930). This rule has its limitations, *see McQuiddy Printing Co. v. Hirsig*, 134 S.W.2d 197 (Tenn. App. 1939), but we think that it should

be applied in this case. Here it is a third party (the state) insisting on its own interpretation of the contract. The limits on the rule of practical construction lose most of their force under these circumstances. How can the state insist on a strict interpretation of the contract when the parties to it have chosen to interpret it differently?

## IV.

Turning to the contract, we note that in its "whereas" clauses it states that Raskin desires to "operate and manage the City's golf course for and on behalf of the City." The other provisions relative to the control and operation of the golf course may be summarized as follows:

(1) All the property, land, structures, golf course improvements, and all equipment located on the land, including any equipment acquired pursuant to the agreement, are the property of the City.

(2) Raskin shall pay the City, on a monthly basis, all net operating income. All Raskin bank accounts receiving deposits from golf course receipt shall be accessible to the City at all times.

(3) Raskin shall be paid an annual fee of $40,000 for its services or three and one-quarter percent of gross income, whichever is greater.

(4) Either party may cancel the agreement upon ninety days written notice.

(5) No capital improvements may be made without the City's approval, and said approval shall be solely at the discretion of the City.

(6) All on-site employees are Raskin's employees, and Raskin shall be responsible for their training and support. However, personnel practices shall be subject to the City's approval.

(7) The City may visit and inspect the property, the books and accounts during any regular business day.

(8) Raskin is required to operate the park in compliance with all laws, rules, and regulations of the Land and Water Conservation Fund Act of the State of Tennessee.

> (9) Raskin shall provides a certified annual audit to meet the requirements of the Comptroller of the State of Tennessee.
>
> (10) Raskin is prohibited from entering into any franchise agreement, management contract, or other contract, license, or permit affecting the property without the prior written consent of the City.

In addition to the contractual provisions, the record shows the following course of dealing: From the beginning, Raskin's president appeared before and reported to the City's finance committee at its monthly meeting. In 1995 the City established a Golf Course Commission, which now oversees the operation of the course, and Raskin's president attends and reports to the Commission monthly. The Commission, according to the City's Finance Director, was established to formulate policies, rules, and regulations, to set rates and fees, and to provide close supervision for the golf course. The Commission considered and rejected a proposal to allow the use of private golf carts on the course and a proposal to sell memberships.

## V.

Considering the contractual provisions and the course of dealing between the parties, we conclude that Raskin was the City's agent, hired to operate the City's golf course. The City retains control over Raskin's operation, exercising that control first through the City Finance Committee, and then through the Golf Course Commission which was created for that very purpose.

The conclusion we have reached is a complete defense to all the sales and use taxes claimed by the Commissioner. It results that the course is conducted and controlled by the City (for the purposes of Tenn. Code Ann. § 67-6-330(13)); the

sales of tangible personal property to Raskin are in fact sales to the City[1] (for the purposes of Tenn. Code Ann. § 67-6-329(13)); and Raskin is not the contractor or subcontractor described in the contractor's use tax; it stands in the shoes of the City itself. *See* Tenn. Code Ann. § 67-6-209(c).

## VI.

We are not unaware of the Commissioner's argument about the presumption against exemptions. *See Kingsport Publishing Corp. v. Olsen*, 667 S.W.2d 745 (Tenn. 1984). We are satisfied that Raskin has carried its burden to overcome the presumption.

The judgment of the trial court is affirmed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings that may become necessary. Tax the costs on appeal to the Commissioner.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE

_____

[1]As an additional fact indicating the soundness of this conclusion we note that Raskin places a notice to the vendor on each purchase order that Raskin is acting as an agent only and is not purchasing the goods or services on its own account.

MIDDLE SECTION

- 8 -

_____
WILLIAM C. KOCH, JR., JUDGE