558 S.W.2d 821 (1977)
The ELECTRIC POWER BOARD OF the METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Appellant,
v.
Jayne Ann WOODS, as Commissioner of Revenue for the State of Tennessee, Appellee.
Supreme Court of Tennessee.
December 5, 1977.
*822 David M. Pack, Pack & Price, Nashville, for appellant.
David S. Weed, Asst. Atty. Gen., Nashville, for appellee.

OPINION
HENRY, Justice.
This is a suit brought under § 67-2305, T.C.A., to recover disallowed vendors' compensation, interest and penalties incurred by a taxpayer for delinquent payment of sales tax. Upon the dismissal of its complaint by the lower court, the taxpayer perfected an appeal to this Court.
Two basic issues are raised in this suit: (1) whether the taxpayer-appellant is liable for the penalties imposed and (2) if so, whether under the facts of this case the taxpayer is entitled to equitable relief from those penalties.

I.
Taxpayer-appellant is the Electric Power Board of the Metropolitan Government of Nashville and Davidson County, also known as the Nashville Electric Service or NES. Prior to 1971, NES remitted its sales tax liability directly to the Tennessee Department of Revenue each month. In late 1971, however, William D. Calgy, Senior Vice-President of Nashville City Bank and Trust Company, persuaded NES to change the manner of paying its sales tax from direct payment to the State to the alternative bank-depository method authorized by § 67-101(11), T.C.A.
Under the procedure followed by NES and the bank, NES sent its tax returns and checks, made payable to the Department of Revenue, for the amount of tax due, to the Nashville City Bank, an official depository of the State of Tennessee. Before 2:00 p.m. on the twentieth of each month (the date tax payments were due), a messenger from NES hand delivered the returns and checks to Mr. Calgy or his secretary, Evelyn Sesler. These two individuals were the only bank employees to whom the payments were to be given by NES.
After the remittance had been received, Mrs. Sesler would take it to the collection window and deposit it. Deposit slips, furnished to NES by the Department of Revenue, were completed by the bank in quadruplicate, one copy being sent to the Department of Revenue, while another copy was returned, usually by mail, to NES.
*823 This method of remitting its sales tax liability had proven satisfactory until September 1975. Mr. Calgy had retired earlier that year, and the NES returns and checks were delivered to Mrs. Sesler alone. When the messenger brought in the August 1975 remittances on September 18, he was unable to find Mrs. Sesler. He looked for her briefly but asked no one as to her whereabouts. Assuming that Mrs. Sesler had merely stepped out of the office, the messenger left the envelope containing the returns and checks in the middle of Mrs. Sesler's desk, as he had done on previous deliveries when she had not been in her office.
Unknown to the messenger and NES, however, Mrs. Sesler was on a two week vacation. Someone in the office, thinking that the envelope was Mrs. Sesler's personal mail, placed it in the desk drawer. When Mrs. Sesler returned on October 1, she discovered the envelope, immediately informed her superiors of what had happened, and deposited the checks. The slips evidencing the deposit of the payments were not received by the Department of Revenue until October 2. NES was disallowed vendor's compensation and assessed interest and penalties pursuant to §§ 67-3021 and 67-3026, T.C.A., for delinquent payment of sales taxes.
When its petition for waiver of penalty was denied by the Department, NES paid the assessment under protest and filed suit for the recovery of the amount paid. The Chancellor found that the tax had not been seasonably paid, that the bank was not acting as the agent of the State in this transaction, that the Department had properly assessed penalties and disallowed vendor's compensation, and that NES was not entitled to equitable remission of penalties.

II.
Appellant asserts that it is not subject to penalties because the tax was seasonably paid and therefore no delinquency occurred. Coupled with this argument is the insistence that "lodging of the tax payment in an official depositary by the taxpayer is an actual and constructive payment of the tax to the [S]tate." Appellant contends that the bank acted as the State's agent, while the State argues that the bank acted as the agent of the depositor.
The pertinent statutory provision is found at § 67-101(11), T.C.A.:
The commissioner of revenue is hereby empowered to accept in payment of all taxes collected by the department of revenue, evidence satisfactory to him that the amount due for the tax has been deposited in a bank in the state of Tennessee, which has been approved by the state treasurer, to the credit of the state of Tennessee. Evidence of the deposit must be furnished the commissioner of revenue on or before the due date of the tax as established by law, and no taxpayer paying his taxes in such manner shall be relieved of any penalty for delinquency upon failure of such evidence to be seasonably furnished. (Emphasis supplied.)
The clear language of the statute requires that an actual deposit be made by the taxpayer, as well as that evidence of that deposit be furnished the commissioner before the date the tax is due. The messenger's action in placing the envelope containing the tax returns and checks on Mrs. Sesler's desk did not satisfy appellant's obligation under this statute. This was a mere delivery whereas the statute requires an actual deposit, which was not made here until October 1 and evidence of which was not received by the Commissioner until October 2, several days after the due date.
We think it is of some significance that the deposit slip used under this alternate method for the payment of state taxes provides that "[i]n accepting deposits and reports of tax payers, the banks act as agents for the depositors and not as agents for the Department of Revenue." This deposit *824 slip is an official form prescribed by the State; and, as aforesaid, a copy goes to the taxpayer after each deposit. Therefore, the taxpayer is charged with knowledge of its contents.
Nor is the bank, as insisted by appellant, the agent of the State under the statute so that "lodging" payment with the bank operates as a constructive deposit. The statute clearly places the burden of seeing that the commissioner is furnished timely evidence of actual deposit upon the taxpayer. There is no indication that the bank-depository is to perform the taxpayer's duty of depositing payments or providing seasonable evidence of deposit.
In Miller v. Insurance Co. of North America, 211 Tenn. 620, 625, 366 S.W.2d 909, 911 (1963), this Court defined an agent as:
`One who undertakes to transact some business, or to manage some affair, for another, by the authority and on account of the latter, and to render an account of it.'
An agreement, contract or understanding between the parties that their acts are those of principal and agent is not necessary for an agency to exist. The existence of an agency is determined by the actual relationships and deeds of the parties. Smith v. Tennessee Coach Co., 183 Tenn. 676, 194 S.W.2d 867 (1946); Sawner v. M.P. Smith Construction Co., 526 S.W.2d 492 (Tenn. App. 1975).
The duty under the statute was clearly the taxpayer's. Under the procedure devised by Mr. Calgy and accepted by NES, the bank was entrusted with the performance of this duty. The bank made the actual deposits, completed deposit slips, and saw that they were sent to the Department of Revenue. An accounting was made to NES by mailing or delivering a receipt to the Power Board. While acting under § 67-101(11), the bank was the agent of the depositor.
Inasmuch as the bank is the agent of NES, not by virtue of any pronouncement made by the Department of Revenue, but by law, the statement printed on the deposit slips, providing that the bank acts as agent of the depositor not the state, is not an administrative rule and is not subject to the requirements of the Administrative Procedure Act. It is a mere recitation of the terms governing the deposit and is in the nature of a contract among the State, the Bank, and NES.
Because of its failure to comply with the provisions of § 67-101(11), T.C.A., appellant's tax payment was delinquent. Under these circumstances, the taxpayer is not allowed dealer's compensation. § 67-3021, T.C.A. In addition, in the case of a delinquency, interest plus a five per cent penalty is added to the amount of tax due. § 67-3026, T.C.A. The Chancellor did not err in holding that penalties were properly assessed against appellant.

III.
The next question for determination is whether this is a suitable case for equitable remission of the penalties.
The present case is analogous to that of Combustion Engineering Co. v. MacFarland, 209 Tenn. 75, 349 S.W.2d 138 (1961). In Combustion Engineering, this Court found that the failure to report was caused by "errors, oversights, improper coding of machines, and so on, of [taxpayer's] various record keepers and accountants, whose duty it was to attend to this phase of the business." Id. at 77, 349 S.W.2d at 139. Equitable relief was denied.[1]
The appellant asserts that the representation made by Mr. Calgy, when he solicited *825 the Power Board's business for the bank, that giving the tax to the bank was the same as giving it to the State constitutes grounds for equitable relief. Mr. Calgy's statements, however, cannot be said to be the proximate cause of the delinquency.
The delinquency in appellant's case was attributable to the negligence and oversight of its employees and agents, combined with the negligence of the bank. Aware that the envelope he carried contained important tax returns and payments, appellant's messenger simply placed the envelope upon Mrs. Sesler's desk when she could not be found. He did not attempt to learn where Mrs. Sesler was or to inform anyone that he was leaving the tax returns in Mrs. Sesler's absence. No one from NES ever ascertained if the bank had actually received the deposit.
The bank itself, as appellant's agent, was guilty of oversights attributable to NES. See Combustion Engineering Co v. MacFarland, supra; Cities Service Co. v. Tidwell, 534 S.W.2d 298 (Tenn. 1976). Although Mrs. Sesler knew that she alone was responsible for handling the NES tax returns and that she would be absent at that time of the month when the remittances were due, she made no effort to inform appellant of her absence or provide for someone else to assume her responsibilities while she was gone. The bank itself, although it realized the importance of these transactions, had never appointed a "cover" for Mrs. Sesler as it had for Mr. Calgy.
We cannot agree with appellant that "the problem in question simply arose over a chain of events which were not precipitated by any of the actors therein." Equitable relief is not called for in this case.

IV.
Appellant makes one last argument, that the provisions of Chapter 106, Public Acts 1977, are applicable to this case and relieve the taxpayer of the assessed penalties.
Chapter 106, effective April 25, 1977, provides that the commissioner may waive a penalty if the "taxpayer has timely filed and paid such tax for a period of at least two (2) years next preceding the due date of the delinquent return and payment," provided the taxpayer has not wilfully disregarded the law or is not grossly negligent.
To do as appellant suggests would be to apply Chapter 106 retrospectively. In the absence of legislative intent or a necessary inference that a statute is to have retroactive force, an act of the legislature is to be given prospective effect only by the courts. Henderson v. Ford, 488 S.W.2d 720 (Tenn. 1972). There is no indication that the legislature intended that Chapter 106 should be retroactive.
All of appellant's assignments of error are overruled and the judgment of the lower court is
Affirmed.
COOPER, C.J., and FONES, BROCK and HARBISON, JJ., concurring.
NOTES
[1] Under the rationale of Benson v. United States Steel Corp., 225 Tenn. 164, 465 S.W.2d 124 (1971), and Tidwell v. Goodyear Tire & Rubber Co., 520 S.W.2d 721 (Tenn. 1975), both of which involved the analogous situation of penalties assessed for tax deficiencies, appellant would not be entitled to relief. In the present case, the law was not unclear, unsettled or misleading. The delinquency was not caused by reliance upon factual misrepresentations made by others nor upon misleading advice given by the Department or some other competent source.