**BENEVOLENT PROTECTIVE ORDER OF ELKS, LODGE NO. 1279, Plaintiff/Appellee,**

v.

**Martha B. OLSEN, Commissioner of Revenue, State of Tennessee, Defendant/Appellant.**

Supreme Court of Tennessee, at Jackson.

May 7, 1984.

Joe C. Peel, Asst. Atty. Gen., Nashville, for defendant/appellant; William M. Leech, Jr., Atty. Gen., of counsel.

Thomas E. Harwood, Trenton, for plaintiff/appellee.

## OPINION

HARBISON, Justice.

Appellee, a local chapter of a fraternal organization, brought this suit to recover retail alcoholic beverage and sales taxes paid under protest. The trial judge permitted recovery, holding that the taxpayer's own cash register receipts and supporting records were sufficient to justify a refund "unless there is some evidence of fraud on

behalf of the taxpayer ...." It is conceded that there is no claim of fraud in the present case.

We are of the opinion that the holding of the trial court was in error and that the case is governed by the decision of this Court in *Edmondson Management Service, Inc. v. Woods*, 603 S.W.2d 716 (Tenn. 1980). For the reasons stated in that case we reverse the decision of the trial court, dismiss the suit for refund and remand the cause to the trial court for any further proceedings which may be necessary.

Appellee is the holder of a license for the on-premises sale at retail and consumption of alcoholic beverages. It is accordingly subject to the privilege taxes provided in T.C.A. § 57–4–301(c) and to numerous other statutes regulating the sale of alcoholic beverages. Appellee was bonded, and at the request of its bonding company, the Department of Revenue conducted an audit of the books and records of appellee for the period January 1, 1979 through November 30, 1981.

The audit was performed on the basis of an average percentage markup in order to determine appellee's proper tax liability for the period. This procedure is discussed in the *Edmondson Management Service, Inc.* case, *supra*, and was approved by this Court. In the procedure, the auditor determines the average percentage markup of alcoholic beverages sold on the basis of the cost of the alcohol in some of the drinks most frequently sold, and upon the selling price of those drinks and the quantity of alcohol contained in them. In the present case this information was obtained from price schedules filed by the taxpayer with the Department of Revenue. Allowances were made for reduced prices permitted on certain occasions and also for spillage and breakage. The average percentage markup thus obtained was compared to the markup based upon sales reported by the taxpayer during the audit period. Where there is a variance of more than fifteen percent between these figures, the Department generally rejects the taxpayer's

records as not truly reflecting gross sales. It then makes an assessment based upon the price schedule markup applied to the taxpayer's verified purchases.

In the present case a variance of approximately thirty percent was revealed by the audit. The Department accordingly disregarded the taxpayer's cash register receipts and other records. It assessed an additional liquor-by-the-drink tax in the amount of $10,001.23 and sales taxes allocable to these additional calculated sales in the amount of $4,047.76.

It was conceded by the taxpayer that in 1979 it sustained a substantial loss or misappropriation of alcoholic beverages, and that not nearly all of the beverages shown to have been purchased were accounted for by the sales records. A new manager was employed early in 1980. He testified that losses had thereafter decreased steadily. Appellee had no system of checks and balances to prevent such losses, and it did not maintain a perpetual inventory during the audit years.

Several witnesses testified on behalf of appellee that they suspected unauthorized disposition of liquor during 1979. In a letter to the Department, appellee stated:

"We feel sure that we know who the culprits were in our 1979 losses but our suspicions will probably be difficult to prove.

"We realize that our 1979 losses do not account for all the taxes we owe and we also realize that due to overpours, spillage, free drinks to visitors, etc. some taxes would be owing; however, we are now instituting procedures to overcome these problem areas and we have always made an honest effort to meet our tax obligations, even to the point of voluntarily requesting an audit."

Despite this concession, appellee at trial denied any liability for additional taxes. It conceded that there had been an understatement of its beer sales, but contended that an overpayment of taxes with respect to beer sales would account for more than any deficiency which might have resulted from under-reporting of other sales of alcoholic beverages. It was conceded, however, that the bartenders were each allowed several free drinks per day, and that free drinks were given to new members, to visiting lodge members and to some officials.

■■■ Appellee recognizes that T.C.A. § 57–4–203 contains a number of prohibited practices for the holders of liquor-by-the-drink licenses. Among these, subsection (e) prohibits the gift of beverages "to any patron or customer." Appellee insists that its officers, visitors and new members are neither "patrons" nor "customers" within the meaning of this statute. The Commissioner disagreed, and we sustain the position of the Commissioner. It was obviously intended by the General Assembly that holders of licenses such as appellee should account for disposition of alcoholic beverages strictly through sales, except where the licensee could establish specific losses through breakage, theft or other special instances. In those cases the Commissioner has provided a means for the licensee to obtain relief from tax liability.

■■■ Appellee is engaged in a highly regulated enterprise in providing alcoholic beverages for sale at retail and consumption on its premises. We find nothing either unconstitutional or improper in any of the regulations in issue in the present case, nor do we find that the Commissioner has misconstrued the applicable statutes. We disagree with the holding of the trial court that the appellee's own records of cash sales should be accepted over the projections and calculations of the Commissioner except when fraud has been shown. As pointed out in the *Edmondson Management Services, Inc.,* case, *supra,* the calculations made by the Commissioner are presumed to be correct. The burden of proof is upon the taxpayer to establish error therein and to prove both entitlement to a refund and the amount thereof. The taxpayer has not done so in the present case, and the burden of proof incumbent upon it has not been carried.

The judgment of the Chancellor is reversed and the cause is dismissed at the cost of appellee.

FONES, C.J., COOPER and BROCK, JJ., and TATUM, Special Justice, concur.