Randal JAMES, d/b/a Randal's Body
Shop, Plaintiff–Appellant,

v.

Joseph B. HUDDLESTON, Commission-
er of Revenue for the State of
Tennessee, Defendant–Appellant.

Supreme Court of Tennessee,
at Nashville.

Aug. 27, 1990.

Geary P. Dillon, Jr., Whitwell, for plain-
tiff-appellant.

Charles W. Burson, Atty. Gen. and Re-
porter, William E. Young, Asst. Atty. Gen.,
Nashville, for defendant-appellant.

OPINION

DROWOTA, Chief Justice.

In this tax case both the Plaintiff taxpay-
er and the Commissioner of Revenue have
appealed the judgment of the Chancellor.
The issues on appeal concern the Plaintiff's
liability for a deficiency in sales and use
tax for the tax years 1983 through 1986.
The Commissioner assessed a tax deficien-
cy, a penalty, and interest against the tax-
payer. After a trial, the Chancellor upheld
the deficiency plus interest, but disallowed
the penalty. Following a hearing on the
Plaintiff's motion for a new trial, the Chan-
cellor amended his prior order by reducing
the award in favor of the Commissioner.
The Commissioner now appeals the reduc-
tion of the award and the disallowance of
the penalty, and the Plaintiff taxpayer ap-
peals the amount of the liability. For the
following reasons, we reverse both the
Chancellor's reduction of the tax liability
and disallowance of the penalty.

Plaintiff taxpayer, Randal James, operat-
ed a body shop during the tax years 1983
through 1986. Plaintiff's business included
selling and repairing motor vehicles. Dur-

ing 1983 and 1984 Plaintiff filed tax reports to the Commissioner of Revenue but did not remit payment with the reports. Plaintiff's deficiency for these years was determined solely from a review of the Plaintiff's monthly sales tax reports submitted to the Department of Revenue during this period. Plaintiff does not dispute he is liable for the deficiency determined for these years.

The deficiency for the tax years 1985 and 1986 was determined partly from an audit and partly from the Department of Revenue's estimate of taxes owed. Carter Zorn, an auditor with the Department of Revenue with 27 years experience, testified that he conducted the audit of Plaintiff's business for the tax years 1984 through 1986. Mr. Zorn testified that the audit revealed Plaintiff's records were so scant and disorganized that they failed to identify total sales. Mr. Zorn testified that the only records Plaintiff possessed regarding his sales of used cars and repair jobs for 1985 and 1986 consisted of:

1) a spiral notebook with two sheets for each year of car sales;

2) purchase invoices for materials and supplies;

3) checks Plaintiff received from other garages and car dealers for whom Plaintiff did repair work; and

4) documentation concerning taxes paid on the sale of used cars at the appropriate county courthouses by some of Plaintiff's customers.

Plaintiff furnished no records stating either the number of repair jobs he had done for the years in question or the amount of revenue he had received from the repair jobs. Mr. Zorn testified that he determined the deficiency for the tax years 1985 and 1986 by (1) examining Plaintiff's sales notebook and ascertaining Plaintiff had sold several cars which had not been reported on his tax returns to the Department for those years and (2) applying a 158% profit mark-up to the Plaintiff's purchase invoices for materials and supplies to establish the amount of repair jobs Plaintiff had performed for the years in question. The 158% profit mark-up represented the aver-

age mark-up for 13 dealers having similar operations to the Plaintiff who were located in approximately the same geographic area. Mr. Zorn allowed Plaintiff credit for the sales tax on used cars that Plaintiff's customers paid and for work Plaintiff performed for other businesses on used cars for resale. Mr. Zorn added the amount Plaintiff owed to the Department for the tax year 1983 and 1984 to the results of his audit and estimate of the amounts Plaintiff owed for the tax years 1985 and 1986 to establish a total sales and use tax deficiency against Plaintiff of $9,906 as of April 20, 1987, including $6,564 tax, $1,770 interest, and $1,572 penalty. Mr. Zorn testified that Plaintiff did not produce any records or documentation to contradict these findings.

Plaintiff testified that his wife kept all the records of the business and that he did not know how many sales or repair jobs he had performed for the years in question or the amount of sales and use tax due the Department for the years in question. Plaintiff's wife testified she believed that all sales and use tax had been paid, although she presented no documentation or records to refute Mr. Zorn's findings.

The trial of this case was held on October 11, 1988 in Grundy County. On February 3, 1989 the court entered an order in favor of the Commissioner for $6,564.00 plus interest but disallowed the penalty. After consideration of the Commissioner's Motion to Amend, the court entered a revised order on March 23, 1989 in favor of the Commissioner for a total amount of $11,643.60 which included $6,564.00 as a tax liability, $3,139.00 in interest and $1,940.60 (20% of the assessment and interest) in attorney's fees and expenses as outlined in Tenn.Code Ann. § 67–1–1803(d). The Court also ordered pursuant to Tenn. Code Ann. § 67–1–801 that interest would continue to accrue on the judgment until the judgment was paid in full.

Plaintiff filed a motion for a new trial and/or reconsideration on April 17, 1989. Following a hearing, the Court amended its prior order on June 20, 1989 by reducing the award in favor of the Commissioner to $10,304.60 which included the following

amounts: $5,880.00 in tax, $2,926.00 in interest as of June 30, 1989 and $1,498.60 in attorney's fees and expenses. The figures are a result of the court reducing the profit mark-up from 158% to 100% for the Plaintiff's purchases and invoices of parts for the tax years 1985 and 1986. The court ordered that interest accrue under Tenn. Code Ann. § 67-1-801.

Plaintiff concedes he owes $1,100.00 in sales and use tax for the tax years 1983 and 1984, but Plaintiff contests the Commissioner's assessment of sales and use tax for the tax years 1985 and 1986. Plaintiff insists that the Department's estimate of taxes due for those years is arbitrary and inaccurate. The State argues that the Commissioner's estimate of tax owed, computed using the 158% profit margin, is correct and that the Chancellor erred in reducing the profit margin from 158% to 100%.

Pursuant to Tenn.Code Ann. § 67-6-517(a) the Commissioner *shall* make an estimate for the taxable period if the report filed is incorrect or false. The Commissioner's assessment is considered prima facie correct and the burden to show that the Commissioner's findings are not correct rests upon the dealer. Section 67-6-517(a) provides:

**Delinquency—Determination and collection of tax.**—(a) In the event any dealer fails to make a report and pay the tax as provided by this chapter, or in case any dealer makes a grossly incorrect report, or a report that is false or fraudulent, *it shall be the duty of the commissioner to make an estimate for the taxable period of retail sales of such dealer,* or of the gross proceeds for rentals or leases of tangible personal property by the dealer, estimating the cost price of all articles of tangible personal property imported by the dealer for use or consumption or distribution or storage to be used or consumed in this state, and assess and collect the tax and interest, plus penalty, if such have accrued, on the basis of such assessment, *which shall be considered prima facie correct,* and the

burden to show the contrary shall rest upon the dealer.

[Emphasis added]

Additionally, under Tenn.Code Ann. § 67-1-1438, the Commissioner has authority to determine a person's tax liability when the person fails to file a statement, report or return required to be filed. Under the statute, the assessment is presumed to be correct unless there is evidence to the contrary:

**67-1-1438. Assessments by commissioner.**—(a) When any person shall fail to file any statement, report or return required to be filed with the commissioner of revenue by any law levying a public tax, license or fee, after being given written notice of same, the commissioner is authorized to determine that liability of such person from whatever source of information may be available to him. An assessment made by the commissioner pursuant to this authority shall be binding as if made upon the sworn statement, report or return of the person liable for the payment of any such tax, license or fee. Any such assessment which is lawfully made against such person shall be presumed accurate unless records are submitted evidencing otherwise.

This Court has consistently held that in order to successfully contest a tax assessment, the taxpayer must prove by clear and convincing evidence that the assessment is incorrect. *Benevolent Protective Order of Elks v. Olsen,* 669 S.W.2d 654, 656 (Tenn. 1984); *Edmondson Management Service, Inc. v. Woods,* 603 S.W.2d 716, 717 (Tenn. 1980); *Howard v. United States,* 566 S.W.2d 521, 528 (Tenn.1978); *McKinnon and Co. v. State,* 174 Tenn. 619, 130 S.W.2d 91 (Tenn.1939). It is not enough for the taxpayer to make vague allegations that the "Department's method of ascertaining the taxes due from him was incorrect ..." to carry his burden of clear and convincing evidence. *Edmondson Management Service,* 603 S.W.2d at 718.

■ This Court approved an average percentage markup procedure similar to the one the Commissioner used in the instant case in both *Edmondson Manage-*

*ment Service, Inc. v. Woods,* 603 S.W.2d 716 (Tenn.1980) and *Benevolent Protective Order of Elks v. Olsen,* 669 S.W.2d 654 (Tenn.1984). In *Benevolent Protective Order of Elks,* the Commissioner conducted an audit to determine sales tax liability due the Department of Revenue for sales of liquor by the drink in the Elks Lodge. *Id.* The Commissioner performed the audit on the basis of an average percentage markup in order to determine the taxpayer's proper tax liability for the audit period. *Id.* This procedure involved determining the average percentage markup of alcoholic drinks sold on the basis of the cost of the alcohol in the most frequently sold drinks, the selling price of the drinks, and the quantity of alcohol contained within the drinks. The auditor allowed the taxpayer credit for reduced prices permitted on certain occasions and for spillage and breakage. *Id.*

The average percentage markup thus obtained was then compared to the markup based upon the taxpayer's reported sales during the audit period and revealed a variance of over fifteen percent between the two markups. The Department therefore rejected the taxpayer's records as inaccurate and made a tax assessment based upon the average percentage markup applied to the taxpayer's verified purchases. *Id.* at 656.

The taxpayer paid the assessment under protest and sued for a refund. The trial court allowed recovery, but on appeal this Court reversed. We found that the taxpayer had not met its burden of establishing error in the Department's method of estimating tax due, and therefore we allowed the Commissioner's assessment based upon an average percentage markup. *Id.*

In the instant case, the Commissioner based his tax assessment for the years 1983 and 1984 on the reports Plaintiff filed with the Tennessee Department of Revenue. Plaintiff filed those reports without payment and does not dispute he owes this amount ($1,100.00 plus interest). The Department determined the remainder of the tax liability by examining the few records and documentation supplied by Plaintiff and applying a 158% average profit markup

to raw materials and supplies. Plaintiff has produced no evidence to refute the Commissioner's determination of tax liability. In fact, the few records Plaintiff produced are in gross contradiction. For instance, the various sales tax reports actually submitted by Plaintiff to the Department of Revenue for the years 1985 and 1986 show taxable sales of about $10,000 whereas Schedule C of Plaintiff's federal income tax returns for the same years stated gross receipts or sales of over $48,000, a discrepancy which Plaintiff never explained. Plaintiff has not met his burden of proving the Commissioner's tax assessment is incorrect. Accordingly, we reverse the Chancellor's reduction of the Commissioner's original assessment.

■ The Commissioner also argues that the Chancellor erred in disallowing the penalty assessed against Plaintiff. We agree. Plaintiff has not shown grounds for equitable rescission of the penalty.

■ The Sales and Use Tax Act imposes a penalty in any instance where the taxpayer has failed to make his return or make the payments on time. Tenn.Code Ann. § 67–1–804. *Cf. Swartz v. Atkins,* 204 Tenn. 23, 315 S.W.2d 393, 394 (1958); *General Electric Co. v. Butler,* 211 Tenn. 196, 364 S.W.2d 361, 363 (1962). The penalty provisions of the act are to be construed strictly against the State and liberally in favor of the taxpayer, since penalties are odious and not favored by the law. *Tennessee Products and Chemical Corp. v. Dickinson,* 195 Tenn. 63, 256 S.W.2d 709, 710 (1953). A court of equity, hearing a controversy between the state and a taxpayer who has been assessed a penalty, has the power of remitting the penalties imposed upon the taxpayer when the equities of the case demand. *Id.* at 710. Such equitable remission of penalties, however, can only be granted upon a showing of good and reasonable cause. *See Cities Service Co. v. Tidwell,* 534 S.W.2d 298, 304 (Tenn.1976).

This Court has held that failures to make correct returns due to errors, oversights and honest mistakes are not grounds for equitable relief from penalties. *See, e.g.*

*General Elec. Co. v. Butler,* 211 Tenn. 196, 364 S.W.2d 361 (1962); *Combustion Engineering Co. v. McFarland,* 209 Tenn. 75, 349 S.W.2d 138 (1961); *Cities Service Co. v. Tidwell,* 534 S.W.2d 298 (1976).

In the instant case Plaintiff simply failed to keep accurate records and failed to report and pay his sales and use tax accurately. There has been no evidence presented of any special circumstances sufficient to warrant an equitable rescission of the penalty assessed against Plaintiff. We therefore reverse the Chancellor's disallowance of the penalty assessed against Plaintiff.

The Chancellor's amended judgment of a tax liability against Plaintiff based upon a 100% profit margin and the Chancellor's disallowance of the penalty is hereby reversed. This cause is remanded to the trial court for a determination of the tax liability, interest, penalty, and attorneys' fees due to the Department of Revenue based upon the Commissioner's original 158% profit markup. The costs of this appeal shall be taxed against the Plaintiff taxpayer.

FONES, COOPER, O'BRIEN and DAUGHTREY, JJ., concur.